IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Sharon D. Lewis, ) | C/A No. 0:10-1197-TLW-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Sharon D. Lewis ("Lewis"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

In September 2005, Lewis applied for SSI and DIB. Lewis's applications were denied initially and on reconsideration and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on July 3, 2008 at which Lewis appeared and testified and was represented by M. League Boylston, Esquire. After holding the record open to allow Lewis's counsel to submit additional evidence, the ALJ issued a decision dated September 24, 2008 finding that Lewis was not disabled. (Tr. 9-19.)

Lewis was born in 1961 and was 40 years old on the alleged disability onset date. (Tr. 24.) She has a high school education and past relevant work experience as a newspaper delivery person.

*PJG*

(Tr. 120, 125.) Lewis alleges disability since December 15, 2001 due to neck and back pains, high blood pressure, and diabetes. (Tr. 120.)

The ALJ made the following findings and conclusions:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2005.

2. The claimant has not engaged in substantial gainful activity since December 15, 2001, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

    \* \* \*

3. The claimant has the following severe impairments: status-post elbow surgery, degenerative disc disease of the lumbar spine, and chondromalacia (20 CFR 404.1520(c) and 416.920(c)).

    \* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

    \* \* \*

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant is able to sit/stand/walk six hours each in an eight-hour workday, and is able to occasionally lift 20 pounds and frequently lift ten pounds.

    \* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

    \* \* \*

7. The claimant was born on [REDACTED], 1961 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

*PJG*

> national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).
>
> \* \* \*
>
> 11.  The claimant has not been under a disability, as defined in the Social Security Act, from December 15, 2001, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 11-18.)

Lewis filed an appeal and submitted additional evidence for consideration, which the Appeals Council admitted into the administrative record. The Appeals Council denied Lewis's request for review on March 10, 2010, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-5.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

> (1)  whether the claimant is engaged in substantial gainful activity;
>
> (2)  whether the claimant has a "severe" impairment;
>
> (3)  whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;
>
> (4)  whether the claimant can perform [her] past relevant work; and



(5)   whether the claimant's impairments prevent [her] from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits.  However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Lewis raises the following issues for this judicial review:

1. Did the Administrative Law Judge err in failing to properly evaluate Plaintiff's complaints and credibility?

2. Did the Administrative Law Judge err in failing to obtain expert vocational testimony?

(Pl.'s Br., ECF No. 8.)

## DISCUSSION

**A.    Lewis's Credibility**

Lewis argues that the ALJ erred in discounting Lewis's testimony regarding her pain and difficulty functioning. Specifically, Lewis argues that throughout the applicable period of time, she consistently complained of pain to her medical providers who, in turn, employed a variety of courses of treatment, thus supporting the credibility of her testimony.

In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). In this matter only the second



step is at issue,[1] during which the ALJ must expressly consider "the intensity and persistence of the claimant's pain [or other symptoms] and the extent to which it affects her ability to work." Id. In making this determination, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

    (i)    Your daily activities;
    (ii)    The location, duration, frequency, and intensity of your pain or other symptoms;
    (iii)    Precipitating and aggravating factors;
    (iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

---

[1] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).



    (v)    Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

    (vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

    (vii)    Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

During the hearing, Lewis testified that she last worked in December 2001 and that she became disabled due to back and hip problems, diabetes, and carpal tunnel syndrome. She testified that she sustained an on-the-job injury to her back when she was hit by a car. She stated that she had been diagnosed with a herniated disc in her back and had been treated with epidural injections. She also testified that she has problems with balance, and had been told by a doctor to use a walker. Lewis further described pain due to pinched nerves in her hips that radiates down her legs as well as muscle spasms up and down her back and legs when sitting for too long.

With regard to her daily activities, Lewis reported at the July 3, 2008 hearing that she could sit for 15 to 20 minutes before needing to get up due to pain. Lewis stated that she swept, washed dishes, and went grocery shopping with her husband. She testified that she occasionally drove a car, but had not done so during the past three months, and attended church when she was able to. She also stated that she was unable style her daughter's hair without her daughter's assistance. (Tr. 14; see also Tr. 25-37, 38-42.)

In this case, the ALJ found that Lewis's "statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the residual functional capacity assessment." (Tr. 14.) In reaching this conclusion, the ALJ expressly considered several factors in discounting the credibility of Lewis's subjective complaints. The ALJ



first discussed the medical evidence presented.[2] While some of these medical records appear to support Lewis's argument that she complained of pain, the ALJ noted many inconsistencies with regard to the intensity, persistence, and limiting effects of that pain between the records and her testimony. For example, the ALJ discussed Lewis's appointments with Dr. T. Robert Rhodin of the Lowcountry Medical Group, LLC, Department of Orthopaedics on September 25, 2006; October 30, 2006; and November 27, 2006. Lewis was initially referred to Dr. Rhodin for complaints of back and knee pain, and Dr. Rhodin recommended that she use a walker and get therapy. (Tr. 15-16, 247.) On follow-up, Lewis reported her knee pain was better but her back pain was worse, and Dr. Rhodin recommended a manual therapist. (Tr. 16, 246.) At Lewis's November 27, 2006 appointment, Dr. Rhodin noted that her MRI revealed mild degenerative joint disease and no specific disc impingement and again recommended a therapy program with a follow-up in four to six weeks. (Tr. 16, 245.) The medical records do not show that Lewis returned to Dr. Rhodin for further treatment. (Tr. 16.) Additionally, the ALJ observed that following lumbar epidural steroid injections in 2008, Lewis reported minimal to absent overall pain since the prior spinal injection. (Tr. 16, 232.) Further, the ALJ observed that although Lewis alleged disability since December 15, 2001, she submitted no clinical evidence showing that she sought treatment or was treated for any type of medical condition until April 2002. (Tr. 17.) The ALJ also noted that Lewis testified that she had not worked since December 2001, yet she reported on April 25, 2002 to Dr. Scott A. Stegbauer that she was working as a para-professional teacher's aide and stated in her 2005 application that she was still working as a paper delivery person. (Tr. 17, 156.) The ALJ observed that Lewis's earnings

---

[2] Although the ALJ held the record open following the hearing to allow Lewis to submit additional evidence, no additional evidence was submitted.



record showed reported earnings in 2003, 2004, and 2005, and that while the ALJ found these earnings did not constitute substantial gainful work activity, he noted that they reflected more activity than Lewis alleged in her testimony. (Tr. 11, 17.) The ALJ also noted that no treating physician has opined that Lewis is not able to work. (Tr. 17.)

Upon a thorough review of the record as a whole, the court finds that the ALJ conducted a proper analysis in determining the credibility of Lewis's subjective complaints. See Craig, 76 F.3d at 595. While Lewis may point to selective medical evidence in the record in support of her argument, such evidence does not render the ALJ's decision unsupported. In determining that Lewis's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible, the ALJ considered Lewis's subjective complaints in conjunction with her abilities to perform daily activities, the medical evidence, and the other evidence of record. Accordingly, Lewis has failed to demonstrate that the ALJ erred in finding that Lewis's subjective complaints are inconsistent with the record. See Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (noting that the absence of ongoing medical treatment can discredit a claimant's allegations); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (noting that "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling"). Moreover, the court may not substitute its judgment for the ALJ's. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts

of evidence). Based on the record as a whole, the court cannot say that the ALJ's determination as to Lewis's credibility is not supported by substantial evidence.

**B.     The Medical-Vocational Guidelines ("the Grids")**

When the ALJ's sequential evaluation reaches Step Five, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). To improve both the uniformity and efficiency of this determination, the Commissioner promulgated medical-vocational guidelines, located at 20 C.F.R. Part 404, Subpart P, appendix 2 (the "Grids"). Heckler v. Campbell, 461 U.S. 458, 461 (1983). The Grids consist of three "Tables," each representing a different residual functional capacity, including sedentary (Table 1), light (Table 2), and medium work (Table 3). Id. Each table then accounts for other vocational factors, including age, education, and previous work experience. For each combination of factors, the Grids provide whether the claimant is "Disabled" or "Not disabled." Id.

The Grids consider only the strength or exertional component of a claimant's disability in determining whether jobs exist that the claimant is able to perform in spite of his or her disability. Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989). "Exertional limitations" exist "[w]hen the limitations and restrictions imposed by [the claimant's] impairment(s) and related symptoms, such as pain, affect only [her] ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. §§ 404.1569a(b), 416.969a(b). A nonexertional limitation "is a limitation that is present whether the claimant is attempting to perform the physical requirements of the job or not, such as mental retardation, mental illness, blindness, deafness or

alcoholism" and is "present at all times in a claimant's life, whether during exertion or rest." Gory v. Schweiker, 712 F.2d 929, 930 (4th Cir. 1983); see also 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

When a claimant suffers *solely* from an exertional limitation and his or her situation falls precisely within one of the Grid categories, the Grid is conclusive. 20 C.F.R. §§ 404.1569a(b), 416.969a(b). However, where a claimant suffers from *both* exertional and non-exertional limitations, the Grids may serve as guidelines, but are not determinative. Walker, 889 F.2d at 49 (citing Wilson v. Heckler, 743 F.2d 218 (4th Cir. 1984)); see also 20 C.F.R. §§ 404.1569a(d), 416.969a(d). Further, if the nonexertional limitation rises to the level that it affects the claimant's residual functional capacity to perform work even though he has the *exertional* capability to perform those jobs, then reliance on the Grids to determine whether the claimant is disabled is precluded. Rather, in those circumstances, the Commissioner has the burden to prove *by expert vocational testimony*—not the Grids—that, despite the claimant's combination of exertional and nonexertional impairments, specific jobs exist in the national economy that the claimant can perform. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983); see also Walker, 889 F.2d at 49.

As stated above, in this case, the ALJ determined that Lewis retained the residual functional capacity ("RFC") "to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant is able to sit/stand/walk six hours each in an eight-hour workday, and is able to occasionally lift 20 pounds and frequently lift ten pounds." (Tr. 13.) He also found that, giving Lewis the benefit of the doubt regarding her report that her past work as a newspaper delivery person entailed lifting up to 25 pounds, Lewis was unable to perform her past relevant work. (Tr. 17.) The ALJ also considered the RFC findings of state agency physicians Dr. Joyce Broadus-Lewis and Dr. Katrina Doig, who found in December 2005 and May 2006, respectively, that Lewis was not

disabled and had the RFC for medium work with limitations. Because the state agency physicians did not have the opportunity to review new clinical evidence submitted since June 2006, the ALJ did not give full credit to their RFC assessment.

Lewis contends that the ALJ erred in solely relying on the Grids to determine that she was not disabled and should have obtained testimony from a vocational expert to determine the effect of Lewis's nonexertional limitations. In support of this argument, Lewis contends that the ALJ erred based on her testimony that she suffered from nonexertional impairments such as significant sleepiness, drowsiness, forgetfulness, depression, and the need to recline and elevate her feet due to pain. However, as discussed above, the ALJ did not find Lewis's testimony credible and Lewis has failed to demonstrate that this decision was not supported by substantial evidence or controlled by an error of law. Therefore, this argument is without merit.

## RECOMMENDATION

For the foregoing reasons, the court finds that Lewis has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

April 7, 2011
Columbia, South Carolina.

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).